# In the United States Court of Federal Claims

Nos. 24-1720 & 25-76 (Consolidated)
(Filed: March 28, 2025)
(Re-issued April 14, 2025)[1]

* * * * * * * * * * * * * * * * * * * * * *

ANALYSIS, STUDIES, AND
TRAINING INTERNATIONAL, LLC,

     *Plaintiff*,

and

SOFIS-TRG, LLC,

     *Plaintiff*,

v.

THE UNITED STATES,

     *Defendant*,

and

METRO ACCOUNTING AND
PROFESSIONAL SERVICES, LLC,

     *Defendant-Intervenor*.

* * * * * * * * * * * * * * * * * * * * * *

    *Paul Hawkins*, Chesapeake, VA, with whom were *J. Bradley Reaves* and *Jacob D. Noe*, for plaintiff, Analysis, Studies, and Training International, LLC.

---

[1] This opinion was originally issued under seal to afford the parties an opportunity to propose redactions of protected information. The parties did not propose any redactions.

*Shomari B. Wade*, Washington, D.C., with whom were *Timothy McLister*, *Christopher M. O'Brien*, and *Olivia C. Bellini*, for plaintiff, SOFIS-TRG, LLC.

*Patrick Angulo* and *Geoffrey M. Long*, Trial Attorney and Senior Trial Counsel, United States Department of Justice, Commercial Litigation Branch, Washington, D.C., with whom were *Yaakov M. Roth*, Acting Assistant Attorney General, *Patricia M. McCarthy*, Director, *Albert S. Iarossi*, Assistant Director, and *Pierce J. Anon*, Law Clerk, for the defendant. *Oladipo Odejide*, United States Air Force, of counsel.

*Michelle F. Kantor*, Chicago, IL, with whom was *Bryan T. Kostura*, for the defendant-intervenor.

## OPINION

BRUGGINK, *Senior Judge.*

This consolidated bid protest concerns a set-aside procurement for women-owned small businesses ("WOSB") to train Air Force drone pilots. To ensure that companies are WOSBs, the solicitation required companies to certify themselves as WOSBs in the System for Award Management ("SAM"). The solicitation further obligated companies to include their SAM certifications with their proposals. After evaluating proposals, the Air Force excluded two companies—Analysis, Studies, and Training International, LLC ("ASTI") and SOFIS-TRG, LLC ("SOFIS")—for SAM-related mistakes. Both companies have sued in this court. They challenge the Air Force's decision as arbitrary and capricious, ask to be reinstated in the competition, and have moved for judgment on the administrative record. Defendants—the United States and intervenor Metro Accounting and Professional Services, LLC ("Metro")—cross moved for judgment on the administrative record. The government also moved to dismiss ASTI's suit on standing grounds. The court heard oral argument on March 19, 2025. For the reasons set out herein, we deny ASTI's and SOFIS's motions for judgment on the administrative record, deny the government's motion to dismiss, and grant defendants' motions for judgment on the administrative record.

*Shomari B. Wade*, Washington, D.C., with whom were *Timothy McLister*, *Christopher M. O'Brien*, and *Olivia C. Bellini*, for plaintiff, SOFIS-TRG, LLC.

*Patrick Angulo* and *Geoffrey M. Long*, Trial Attorney and Senior Trial Counsel, United States Department of Justice, Commercial Litigation Branch, Washington, D.C., with whom were *Yaakov M. Roth*, Acting Assistant Attorney General, *Patricia M. McCarthy*, Director, *Albert S. Iarossi*, Assistant Director, and *Pierce J. Anon*, Law Clerk, for the defendant. *Oladipo Odejide*, United States Air Force, of counsel.

*Michelle F. Kantor*, Chicago, IL, with whom was *Bryan T. Kostura*, for the defendant-intervenor.

## OPINION

BRUGGINK, *Senior Judge.*

This consolidated bid protest concerns a set-aside procurement for women-owned small businesses ("WOSB") to train Air Force drone pilots. To ensure that companies are WOSBs, the solicitation required companies to certify themselves as WOSBs in the System for Award Management ("SAM"). The solicitation further obligated companies to include their SAM certifications with their proposals. After evaluating proposals, the Air Force excluded two companies—Analysis, Studies, and Training International, LLC ("ASTI") and SOFIS-TRG, LLC ("SOFIS")—for SAM-related mistakes. Both companies have sued in this court. They challenge the Air Force's decision as arbitrary and capricious, ask to be reinstated in the competition, and have moved for judgment on the administrative record. Defendants—the United States and intervenor Metro Accounting and Professional Services, LLC ("Metro")—cross moved for judgment on the administrative record. The government also moved to dismiss ASTI's suit on standing grounds. The court heard oral argument on March 19, 2025. For the reasons set out herein, we deny ASTI's and SOFIS's motions for judgment on the administrative record, deny the government's motion to dismiss, and grant defendants' motions for judgment on the administrative record.

BACKGROUND

In December 2022, the Air Force issued a request for proposals to train and support an MQ-9 drone training unit at Holloman Air Force Base, New Mexico. AR 169. The successful offeror would provide "all management, tools, supplies, equipment, supervision, labor, and all other items and services required" for drone training. AR 169. The award would result in a fixed-priced contract with a one-year base period and four one-year option periods. AR 1171–86. Proposals were due January 23, 2023. AR 349.

Importantly, the Air Force designated the solicitation as a 100% set aside for WOSBs. AR 1169. To that end, one of the solicitation's "[s]ubmission [r]equirements" incorporated the Department of Defense's class deviation requirement for "verification of eligibility of small business joint ventures." AR 160 (cleaned up). The class deviation requirement instructed offerors that they "must submit" SAM certifications with their offers showing that they are "[w]omen-owned small business[es]" "under the WOSB Program." AR 160. SAM is a government website that businesses register in to "apply for federal grants or loans or bid on government contracts." *About This Site*, SAM.gov (last visited Mar. 25, 2025), https://sam.gov/about/this-site. As part of the registration process, businesses fill out registration forms to certify, among other things, what type of small business they are (e.g., veteran-owned, women-owned, etc.). *See id.* Once registered, businesses can access and download their SAM certifications, which reflect the businesses' registration statuses. The solicitation's class deviation requirement, in turn, required offerors to download their SAM certifications and submit them with their proposals. AR 160. Beyond submitting their SAM certifications, offerors were also "required to be registered in SAM when submitting an offer or quotation, and shall continue to be registered until time of award . . . ." FAR 52.204-7(b)(1) (2018).

Ten offerors, including ASTI and SOFIS, timely submitted proposals on January 23, 2023. AR 2879. ASTI is a joint venture between ASTA Group, LLC, and Crew Training International, Inc. AR 1793. During the evaluation, the Air Force narrowed the competitive range to three offerors: ASTI, SOFIS, and Metro. AR 3180. The Air Force then requested and received final proposal revisions from ASTI and SOFIS in August 2023 and Metro in January 2024. AR 3059–60, 3071–81, 3172, 3180. As relevant here, SOFIS's 2023 final proposal revisions included updated personnel and

3

revised pricing.  AR 2960–66.  The Air Force ultimately awarded the contract to ASTI on February 14, 2024.  AR 3194, 3204.

Yet ASTI's proposal had a problem: it did not include ASTI's SAM certifications.  *See* AR 4355.  ASTI had an active SAM registration on January 23, 2023, but that registration reflected that ASTI was *not* a WOSB. *See* AR 4083 (leaving unchecked a checkbox indicating that "offeror represents that it is a women-owned small business concern"); AR 4096 (ASTI "represents that it is not a women-owned small business concern"). Instead, ASTI provided a "narrative" with its offer identifying itself as a WOSB based on its joint venture operating agreement, signed in December 2022.  AR 1793, 1954.   According to ASTA Group's Director of Operations, ASTI is in fact a WOSB, but ASTI's certification as a non-WOSB resulted from a mistake while registering ASTI in SAM.  AR 4132.

SOFIS's proposal had a similar, but distinct, SAM complication. SOFIS submitted its SAM certifications (which were active) with its proposal.  AR 2505–18.  But in January 2024, SOFIS's SAM registration lapsed and became inactive for five days (January 6 to January 11, 2024). AR 4360.  As noted, FAR 52.204-7 required offerors "to be registered in SAM when submitting an offer or quotation, and shall continue to be registered until time of award . . . ."  FAR 52.204-7(b)(1) (2018).

The Air Force learned of these defects after SOFIS protested the Air Force's award to ASTI.  First, SOFIS protested that ASTI was not an eligible WOSB joint venture at the Small Business Administration.  AR 3350.  After the Administration dismissed SOFIS's protest, SOFIS objected to the Government Accountability Office ("GAO") that ASTI had not certified as a WOSB joint venture.  AR 3584–85.  In response, the Air Force took corrective action to verify offerors' WOSB eligibility.  AR 3687.

The Air Force discovered ASTI's missing SAM certifications first. The Air Force downloaded ASTI's SAM certifications and found that ASTI was not registered as a WOSB when proposals were due in January 2023. AR 3882.  The Air Force then sent ASTI an evaluation notice, which stated that ASTI failed to maintain up-to-date SAM certifications and asked ASTI to provide a full printout of ASTI's SAM certifications from January 2023. AR 3695.

4

In its May 2024 response, ASTI acknowledged that its SAM certifications did not reflect its WOSB's status but blamed the error on SAM "functionality issues." AR 3698. ASTI further asserted that its faulty SAM certifications had no bearing on its eligibility and provided a SAM printout dated April 2023. AR 3699. The printout showed that ASTI was not a WOSB. AR 3712, 3727–28, 3748–49. ASTI also supplied the Air Force with a copy of ASTI's SAM homepage dated December 20, 2022. That reflected that ASTI was a WOSB, but it also directed the viewer to "[c]heck the registrant's" SAM certifications to verify ASTI's actual SAM-registration status. AR 3779, 3781. Finally, ASTI provided ASTA Group's certifications, which showed that ASTA was a WOSB. AR 3696, 3814.

Based on ASTI's response, the Air Force excluded ASTI from the competition in July 2024. The Air Force explained that ASTI did not satisfactorily respond to the evaluation notice because ASTI did not provide a printout of its SAM certifications that overlapped with ASTI's proposal submission in January 2023. AR 3883, 3893. As a result, the Air Force concluded that ASTI was nonresponsive to the evaluation notice and excluded ASTI from the competitive range. AR 3893.

Also in July 2024, SOFIS, Metro, and the Air Force discussed SOFIS's and Metro's proposed full-time equivalents ("FTEs"). The Air Force asked SOFIS and Metro to verify their proposed FTEs and stated that "[a] [r]equest for [final proposal revisions] will be issued if any manning changes are noted." AR 3895–96, 3904–05. SOFIS responded that it had discovered new potential efficiencies and proposed decreasing its personnel levels. *See* AR 3897–900. Metro did likewise. AR 3906–09. Both recognized that reduced FTEs would "necessitate a revision" to their price proposals, AR 3898, 3906, but neither submitted revised prices, *see* AR 3897–903, 3906–12. Nor did the Air Force request final proposal revisions.

In August 2024, ASTI protested the Air Force's July 2024 decision to exclude ASTI from the competitive range. AR 3927. ASTI argued that its failure to submit its SAM certifications with its proposal was a clerical error that did not merit exclusion. ASTI moreover claimed the Air Force should have tried to clarify ASTI's mistake before excluding ASTI. AR 3935–39. The Air Force agreed to take further corrective action and "re-evaluate all offerors in strict accordance with the terms of the solicitation." AR 4349. The GAO then dismissed ASTI's protest. AR 4351.

5

In October 2024, the Air Force excluded both ASTI and SOFIS due to issues with their SAM registrations. AR 4355. The Air Force found that neither ASTI nor SOFIS submitted SAM certifications with their January 2023 proposals, meriting their exclusion for failure to comply with the class deviation requirement. AR 4355. The Air Force also noted that SOFIS's SAM registration lapsed in January 2024, violating FAR 52.202-7(b)(1) (which required uninterrupted registration) and justifying SOFIS's exclusion on that basis as well. AR 4359–60. The FAR Council later amended FAR 52.202-7, which now requires active SAM registrations only at offer and award, not continuously. Federal Acquisition Regulation: Clarification of System for Award Management Preaward Registration Requirements, 89 Fed. Reg. 89472-01 (Nov. 12, 2024) (to be codified at 7 C.F.R. pt. 52). That change did not take effect until November 12, 2024.

Both ASTI and SOFIS sued in this court challenging their exclusions. ASTI reiterates that its failure to submit SAM certifications was a clerical error and that the Air Force should have tried to clarify what happened rather than excluding ASTI. SOFIS, for its part, advances three arguments: (1) it submitted its SAM certifications with its January 2023 proposal; (2) its response to the July 2024 evaluation notice was a final proposal revision that superseded its original offer, thereby curing its January 2024 SAM-registration lapse; and (3) the FAR Council's recent amendment to FAR 52.204-7(b)(1) retroactively remedies SOFIS's January 2024 SAM-registration lapse. The court consolidated the actions, which are now ripe for decision. For the reasons set out below, we reject both protests.

DISCUSSION

I.     Standard of Review

The Tucker Act grants this court jurisdiction over bid protests. 18 U.S.C. § 1491(b)(1). In any bid protest, this court "review[s] [an] agency's decision pursuant" to the standards set forth in the Administrative Procedure Act ("APA"). § 1491(b)(4). Under the APA, we review an agency's action to see if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(1)(A). We may "set aside" a procurement decision as arbitrary or capricious if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Barbaricum, LLC v. United States*, 172 Fed. Cl. 186, 195 (2024) (quoting

*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

The Tucker Act mandates deferential review of agency procurement decisions. *Id.* at 196. If the agency "provided a coherent and reasonable explanation of its exercise of discretion," we will not set aside its decision. *Mitchco Int'l, Inc. v. United States*, 26 F.4th 1373, 1384 (Fed. Cir. 2022) (quoting *Impresa*, 238 F.3d at 1333). To be sure, our review "is not a rubber stamp," *Great Lakes Dredge & Dock Co. v. United States*, 60 Fed. Cl. 350, 358 (2005), but we cannot substitute our judgment for that of the agency, *Barbaricum*, 172 Fed. Cl. at 196.

Standing is another key component of our bid protest jurisdiction. To have bid protest standing, a protestor must show: (1) that it is an interested party and (2) that it was prejudiced by a significant error in the procurement process. *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017). To satisfy the interested party requirement, a protester must show that it is an actual or prospective bidder who possesses the requisite direct economic interest. *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009). A protestor has a direct economic interest if it had a substantial chance of winning the contract. *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358–59 (Fed. Cir. 2018). For the prejudice prong, the protestor must establish that the government's error thwarted the protestor's substantial chance of receiving the contract. *Diaz*, 853 F.3d at 1358.

Lastly, we review motions for judgment on the administrative record under Rule 52.1. Rule 52.1 provides the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Genuine issues of material fact do not preclude judgment on the administrative record because we can resolve questions of fact by referencing the administrative record, *id.* at 1355–56, but we "will not put words in an agency's mouth or invent supporting rationales the agency has not itself articulated . . . ." *ENGlobal Gov't Servs., Inc. v. United States*, 159 Fed. Cl. 744, 764 (2022) (quoting *IAP Worldwide Servs.*, 159 Fed. Cl. 265, 286 (2022)).

II.    The Air Force Did Not Abuse Its Discretion by Excluding ASTI

A.  ASTI Has Standing

As a threshold issue, defendants argue that ASTI lacks standing to bring this challenge. They argue that ASTI is ineligible to receive a contract because ASTI failed to certify as a WOSB in SAM. And because ASTI cannot receive a contract, ASTI is not an interested party and lacks standing.

ASTI counters that it has standing. ASTI argues that it had an active (albeit flawed) SAM registration when it submitted its proposal, and that it will likely get the award if let back into the competitive process because it originally received the award. ASTI also argues that the SAM registration requirement was permissive, not mandatory, so any infirmity or noncompliance was a clerical error.

ASTI has standing. First, ASTI is an interested party. It is an actual bidder, and it has a substantial chance of winning the contract if allowed to compete because it received the award before and offered the best overall value, including lowest cost. AR 3186, 3194, 3347. Next, ASTI sufficiently alleges that the Air Force made a procurement error which prejudiced ASTI. But for the alleged procurement error—ASTI's exclusion because it did not submit its SAM certifications with its proposal—ASTI would likely receive the award again. Consequently, ASTI has standing.

Defendants' standing arguments are mistaken. Fundamentally, defendants conflate "the prejudice inquiry relevant to the merits" and "the prejudice inquiry relevant to standing." *Bionetics Corp. v. United States*, 159 Fed. Cl. 834, 840 (2022). We have rejected defendants' flawed argument—plaintiffs lose standing if they fail to conform with a solicitation's material terms—because "a protester would virtually always be stripped of standing should the [c]ourt ultimately determine that the protestor's claims fail on the merits." *Id.* For example, we held in *Bionetics* that the protester lost on the merits while rejecting the government's argument that the protester lacked standing. *Id.* at 841. Here too, ASTI's loss on the merits (see below) does not preclude standing. *See WaveLink, Inc. v. United States*, 154 Fed. Cl. 245, 263 (2021) (Standing "turns entirely on the impact that the alleged procurement errors had on a plaintiff's prospects for award," not "the actual unlawfulness of the contest agency decision"). In sum, although we conclude that ASTI's "claims are not meritorious," we reject defendants' contention that ASTI lacks standing. *Bionetics*, 159 Fed Cl. at 841.

### B. ASTI's Failure to Submit Its SAM Certifications was a Material Error Justifying Exclusion from the Competitive Range

ASTI argues that the solicitation's class deviation requirement is not material and cannot justify ASTI's exclusion. ASTI's principal argument is that the Air Force did not need ASTI's SAM certifications to verify ASTI's eligibility given that ASTI established its eligibility through alternative evidence. In addition, ASTI argues that the class deviation requirement was not material because the solicitation did not say that noncompliance would result in exclusion. And while ASTI concedes that the class deviation requirement was binding on ASTI, it claims that fact alone does not make the requirement material. Next, ASTI reasons that the certification requirement is not material because it has no impact on price, quality, quantity, or delivery. ASTI also notes that the Air Force overlooked ASTI's missing certifications for months before the award, so the absence of the certifications had no material impact on the evaluation. Finally, ASTI maintains that the Air Force abused its discretion by not clarifying why ASTI's SAM certifications were missing.

Defendants counter that ASTI's failure was a material error, meaning that the Air Force had no choice but to exclude ASTI. They argue that the class deviation requirement served a substantive purpose and is material because it was both important and binding. Defendants assert that the requirement is important as it confirms offerors' eligibility for the award, imposes legal obligations on offerors, and ensures that the Air Force has the most accurate information. Defendants argue that the requirement is binding given its mandatory language. Defendants also contend that ASTI cannot cure its mistake by providing alternative evidence of WOSB eligibility, so clarifying discussions were unnecessary.

A proposal that does not conform to a solicitation's material terms is ineligible for a contract award. *E.W. Bliss Co. v. United States*, 77 F.3d 445, 448 (Fed. Cir. 1996). A solicitation term is material when it is (1) express in the solicitation and (2) serves a substantive purpose. *DigiFlight, Inc. v. United States*, 150 Fed. Cl. 650, 657 (2020), *appeal dismissed per stipulation*, 2021 WL 63337494 (Fed. Cir. Sep. 22, 2021). A term can serve a substantive purpose in one or more ways: when it is important to the government's evaluation of the offer, binding on the offeror, or has more than a negligible impact on the bid's price, quantity, quality, or delivery. *Thalin, LLC v. United States*, 166 Fed. Cl. 246, 255–56 (2023).

9

The class deviation requirement is material. First, no party disputes that the class deviation requirement is express in the solicitation. AR 160. Second, it serves a substantive purpose because SAM certifications are important to the government's evaluation. The solicitation was a 100% set aside for WOSBs. For that reason, whether an offeror was a WOSB was not a peripheral concern but central to the set aside's purpose. And in the Air Force's judgment, which we cannot second guess, *see Barbaricum*, 172 Fed. Cl. at 196, the best way to verify an offeror's status as a WOSB was through the class deviation requirement. The solicitation, in turn, specified exactly how offerors could satisfy the class deviation requirement: by submitting a printout of their SAM certifications, which would unmistakably show whether an offeror was, in fact, a WOSB. *See* AR 160. In essence, an offerors' SAM certifications were not an extraneous bit of paper, but *the* way the Air Force could best verify—with ease and certainty—whether an offeror could meet the set aside's core purpose.

Multiple FAR provisions incorporated in the solicitation reflect how important SAM certifications were to the government's evaluation. AR 78, 160 (incorporating FAR 52.204-8(d), 52.212-3(b)–(c), 52.219-1(c)). For example, FAR 52.212-3 provides that offerors "must complete" their SAM certifications and verify, "by submission of this offer," that their SAM certifications are "current, accurate, complete, and applicable." FAR 52.212-3(b)(2)–(c). Similarly, FAR 52.219-1 specifies that an offeror, "as part of its offer," "represents" that it is a WOSB. FAR 52.219-1(c)(ii)(4); *see also* AR 160 (stating that offerors must submit representations required by FAR 52.219-1). The solicitation also stated that offerors "shall ensure that all data [are] updated in SAM." AR 148. Together, these provisions show that SAM certifications—and by extension, the class deviation requirement—were not an afterthought. Rather, the solicitation's continued and repeated emphasis on the importance of offerors providing complete and up-to-date SAM certifications shows that the certifications were a critical ingredient in the government's evaluation. *See Superior Optical*, 173 Fed. Cl. at 254 ("The agency plainly considers the certification requirement 'important' . . . given its mandatory terms derived from . . . regulatory commands.").

The solicitation further confirms the class deviation requirement's importance when it stated that certain information—including SAM certifications—is "essential to the understanding and comprehensive validation of proposals." AR 158. The solicitation also explained that offerors' compliance with "the solicitation's requirements," including "all

10

stated . . . certifications," was relevant to the government's award decision. *See* AR 162; *see also* AR 157 (award would go "to the responsible offeror whose offer conforming to the solicitation will be most advantageous to" the Air Force). These statements reaffirm that the submission of SAM certifications was not an ancillary concern. Instead, the Air Force considered the certifications "essential," such that compliance with "stated" "certifications" like the class deviation requirement would affect the government's evaluation. *See* AR 157–58, 162. Put another way, SAM certifications were important—indeed, "essential"—to the government's evaluation.

The class deviation requirement is also material because it is binding on ASTI. The requirement states that offerors "must" submit their SAM certifications. AR 160. "Must" is mandatory and thus binding. *See, e.g.*, *Superior Optical*, 173 Fed. Cl. at 254 (solicitation requirement was binding because of its "mandatory terms"); *Bridges v. United States*, 156 Fed. Cl. 129, 133 n.3 (2021) ("[A]s a rule, courts treat the word 'must' as mandatory."), *aff'd*, 54 F.4th 703 (Fed. Cir. 2022); *O'Farrell v. Dep't of Def.*, 882 F.3d 1080, 1085 (Fed. Cir. 2003) (referring to "must" as a "mandatory term"). The class deviation requirement, moreover, was a "[s]ubmission [r]equirement." AR 160; *see also Superior Optical*, 173 Fed. Cl. at 254 (categorical submission requirements cannot be ignored as immaterial). Accordingly, the class deviation requirement is material, not only because it was important to the government's evaluation of ASTI's offer, but because it was binding on ASTI.

ASTI's counterarguments are unavailing. ASTI's principal argument is that because its WOSB eligibility is settled, the SAM certification requirement serves no substantive purpose and is thus immaterial. Although ASTI's status is not at issue here, that argument suffers from three problems.

To begin, whether a solicitation term is material depends on the solicitation's language, not extrinsic evidence. *See DigiFlight*, 150 Fed. Cl. at 657 (courts look to the solicitation's ordinary meaning and cannot "resort to extrinsic evidence to interpret them"). Indeed, when a solicitation term is "clear and unambiguous," we must follow the term's "plain and ordinary meaning." *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004). Here, the class deviation requirement is unambiguous: offerors "must submit" their SAM certifications with their offers. AR 160; *see also WaveLink*, 154 Fed. Cl. at 273 (when a "solicitation provision uses *mandatory* language that is clear and unambiguous," the issue is not whether

11

the offeror's proposal was reasonable but whether it met the requirement). We cannot look beyond the solicitation's language to extrinsic evidence, such as ASTI's WOSB status, to determine whether the class deviation requirement is material.

More importantly, a term cannot be material for one party and immaterial for another. ASTI argues that the class deviation requirement is immaterial as to ASTI because ASTI is a WOSB. Yet the implication of that reasoning is that the requirement would be material for a non-WOSB offeror, or at least an offeror whose WOSB status is in doubt. But nothing in the solicitation—nor any authority ASTI cites—suggests that a term's materiality fluctuates from offeror to offeror. *Accord DigiFlight*, 150 Fed. Cl. at 657 (a term's materiality is rooted in the solicitation's text); *Superior Optical*, 173 Fed. Cl. at 255 n.11 (argument that an agency should ignore a missing certification because the offeror satisfied the certification's substance had "no obvious bearing" on the case when the agency would have "to overlook the *lack* of a required certification"). If the class deviation requirement is material for non-WOSBs, which ASTI does not seem to dispute, then it must be material for WOSBs too.

The remaining defect in ASTI's leading argument is that it would force this court to weigh how much alternative evidence of SAM certification is enough. Imagine an offeror who, like ASTI, is a WOSB but submits neither its SAM certifications nor any other documentation showing its WOSB status. Would the class deviation requirement be material then? Or would the Air Force have to investigate whether the offeror was actually a WOSB before finding the offer noncompliant? And if the class deviation requirement would be material in that situation, where is the line between that and what ASTI did here? ASTI has no answer.

The upshot of ASTI's position is that it would put agencies and this court in a bind. Agencies could never be sure how much alternative evidence would suffice to satisfy class deviation requirements, and the court would be left second guessing agency judgments. In effect, ASTI wants to place the burden on the Air Force "to cobble together a compliant offer" based on the various documents ASTI provided, *see Veterans Elec., LLC v. United States*, 142 Fed. Cl. 566, 576–77 (2019), but neither FAR nor the solicitation require the agency to do ASTI's work for it, *see Superior Optical*, 173 Fed. Cl. at 255.

ASTI also argues that its SAM certifications were not legally required because (1) the solicitation did not state that failure to submit SAM certifications would result in exclusion from the competition and (2) simply because the class deviation requirement was binding does not make it material. Neither argument is correct.

First, we have never said that the threat of exclusion is necessary to find a term material. We have recognized that a term is material when the solicitation says that noncompliance with the term is a basis for exclusion. *See, e.g.*, *Superior Optical*, 173 Fed. Cl. at 253; *DigiFlight*, 150 Fed. Cl. at 658. But it does not follow that such stringent penalties are always necessary to find a term material. Instead, the central question is whether the term is important to the government's evaluation, binding on the offeror, or impacts price, quantity, quality, or delivery, *see DigiFlight*, 150 Fed. Cl. at 657, irrespective of whether noncompliance is stated as a basis for exclusion. And here, the combination of the class deviation requirement serving an important purpose—verifying offerors are WOSBs—along with it being binding—which ASTI concedes it is—shows that the requirement is material even if the solicitation did not say that noncompliance would result in exclusion from the competition.

Second, our caselaw indicates that a term can be material simply by being binding. *See, e.g.*, *GovWave, LLC v. United States*, No. 24-172, 2025 WL 664751, at *50 (Fed. Cl. Feb. 3, 2025); *Am. K-9 Detection Servs., LLC v. United States*, 155 Fed. Cl. 248, 278 (2021); *DigiFlight*, 150 Fed. Cl. at 657; *ManTech Advanced Sys. Int'l, Inc. v. United States*, 141 Fed. Cl. 493, 508 (2019). And even if the class deviation requirement's binding nature was not enough, the fact that it is important to the government's evaluation makes it material. *See Bus. Integra, Inc. v. United States*, 116 Fed. Cl. 328, 335 (2014).

Nor are we persuaded by ASTI's argument that the class deviation requirement is immaterial because it has no effect on price, quantity, quality, or delivery. ASTI alleges that the Federal Circuit's decision in *Oak Grove Technologies, LLC v. United States* stands for the proposition that a term is material only when it affects price, quantity, quality, or delivery, thereby implicitly overruling any contrary precedent from this court. *See* 116 F.4th 1364, 1376 (Fed. Cir. 2024). But ASTI reads too much into the Federal Circuit's silence, for we cannot presume where the law stands based on what the Federal Circuit may have done "*sub silentio*." *Passamaquoddy Tribe v. United States*, 82 Fed. Cl. 256, 265 n.10 (2008), *aff'd*, 426 F. App'x 916

13

(Fed. Cir. 2011) (precedent should be followed unless explicitly overruled). And even if the class deviation requirement does not affect price, quantity, quality, or delivery, it is still binding and important to the government's evaluation and therefore material. In addition, ASTI's argument implies that no class deviation requirement would ever be material. Indeed, when the court asked that very question at oral argument, ASTI could not articulate when, under its theory, a class deviation requirement would ever be material. *See* Oral Arg. at 39:20–42:52. *Oak Grove's* silence does not endorse such a sweeping result.

ASTI's remaining arguments are unavailing. The fact that the Air Force overlooked ASTI's missing certifications is irrelevant because the Air Force cannot waive a material requirement, and it would be unfair to other competitors to allow the Air Force to do so. *See Superior Optical*, 173 Fed. Cl. at 255. Lastly, because ASTI's omission was a material error, the Air Force could not cure the error by holding clarifying discussions. *Id.* at 256. The Air Force, therefore, did not abuse its discretion by excluding ASTI.

III.   The Air Force Did Not Abuse Its Discretion by Excluding SOFIS

A. SOFIS Did Not Submit a Final Proposal Revision

SOFIS argues that its January 2024 SAM-registration lapse did not render SOFIS ineligible for award consideration. SOFIS concedes its SAM registration lapsed in January 2024, but it argues that it cured the lapse by submitting a final proposal revision in response to the Air Force's July 2024 evaluation notice. To support that argument, SOFIS cites our decision in *Hanford Tank Disposition Alliance, LLC v. United States* for the proposition that a final proposal revision can cure a SAM registration lapse. *See* 173 Fed. Cl. 269, 312 (2024). SOFIS reasons that its revised proposal in July 2024 superseded its original, January 2023 offer. And, therefore, the relevant period for compliance with FAR 52.204-7(b)(1)'s continuous registration requirement reset to July 2024, thereby curing SOFIS's January 2024 SAM-registration lapse.

Defendants disagree and argue that SOFIS cannot cure its January 2024 SAM-registration lapse. They maintain that a majority of our caselaw holds that SAM-registration lapses are incurable. And even if *Hanford* is correct and registration lapses can be cured, defendants reason that *Hanford*'s rule does not apply here because SOFIS did not submit a final proposal revision.

14

At the time of SOFIS's SAM-registration lapse, FAR 52.202-7(b)(1) required continuous registration in SAM. "An [o]fferor is required to be registered in SAM when submitting an offer or quotation, and shall continue to be registered until time of award . . . ." FAR 52.202-7(b)(1) (2018). Courts uniformly understood that the rule required offerors to be continuously registered in SAM from submission to award. *See, e.g.*, *Zolon PCS II, LLC v. United States*, 172 Fed. Cl. 742, 753 (2024); *Indep. Rough Terrain Ctr., LLC v. United States*, 172 Fed. Cl. 250, 254, 260–61 (2024); *Thalle/Nicholson Joint Venture v. United States*, 164 Fed. Cl. 224, 233–34 (2023). Any SAM-registration lapse after submission of the initial offer would disqualify an offeror. *See Zolon*, 172 Fed. Cl. at 753.

Here, SOFIS's registration lapsed between the submission of its initial offer and award, rendering it ineligible. SOFIS does not dispute that its SAM registration became inactive between January 6 and January 11, 2024. That lapse, in turn, violated FAR 52.204-7, which requires continuous registration. FAR 52.204-7(b)(1) (2018). An offeror who does not maintain continuous SAM registration is ineligible for contract award. *See Thalle*, 164 Fed. Cl. at 233–34. Thus, under the rule's plain language, SOFIS's failure to maintain active SAM registration renders it ineligible. *See Zolon*, 172 Fed. Cl. at 753.

SOFIS insists that it could cure the registration lapse, but our caselaw says otherwise. *Zolon* is instructive. There, an offeror protested that several of its competitors' SAM registrations had lapsed after submission of initial offers. *Id.* at 749. In response, the agency took corrective action and approved individualized exceptions from FAR 52.204-7's continuous registration requirement. *Id.* This court held that the agency violated FAR 52.204-7 in doing so. *Id.* at 758. In reaching that conclusion, we rejected the agency's argument that FAR 52.204-7 "only requires offerors . . . to be registered from the time they submit a response to the most recent (post-award) amended [s]olicitation." *Id.* at 752. Instead, we recognized that FAR 52.204-7's compliance clock is not "triggered" by the submission of the latest offer but simply "an offer." *Id.* Even when an offeror submits multiple offers during a bid, FAR 52.204-7(b)(1)'s continuous registration clock starts at the time of the initial offer. *Id.* at 753. Thus, if an offeror's SAM registration lapses after the initial offer, it cannot cure that lapse by submitting another offer. *Id.*; *see also Indep. Rough Terrain*, 172 Fed. Cl. at 254, 260–61; *Thalle*, 164 Fed. Cl. at 229–30, 233–34.

15

Consequently, whether SOFIS submitted a new offer in July 2024 is irrelevant. The relevant date for FAR 52.204-7(b)(1) is the original submission date in January 2023. And because SOFIS's registration lapsed in January 2024, the Air Force had no choice but to exclude SOFIS for failure to comply with FAR 52.204-7(b)(1).

Even if a final proposal revision could have cured SOFIS's SAM-registration lapse,[2] SOFIS did not submit a revised proposal. *Hanford*—the chief case SOFIS relies on to support its position—shows why. There, the agency made an award, an offeror protested, the agency took corrective action, opened discussions, and—critically—asked for and received offerors' revised proposals. *Hanford*, 173 Fed. Cl. at 312. The court reasoned that the submission of revised proposals—which included "substantial[] changes" to personnel and pricing—superseded offerors' initial offers. That, in turn, reset FAR 52-204-7(b)(1)'s continuous registration clock, meaning that offerors only had to be continuously registered from the date they submitted revised proposals, not original offers. *See id.* at 314, 316. Thus, the *Hanford* court concluded that offerors could cure SAM-registration lapses and avoid being disqualified by FAR 52.204-7(b)(1) if they submitted "substantially changed" revised proposals.

SOFIS's circumstances are distinguishable. Unlike in *Hanford*, the Air Force never requested final proposal revisions; it only said that it might request them. AR 3895–96, 3904–05. More importantly, both Metro and SOFIS noted that their changed FTEs would require price revisions but never submitted revised price proposals. AR 3897–903, 3906–12. In effect, SOFIS did not submit a revised proposal. Indeed, SOFIS's previous, 2023 final proposal revisions confirm that fact. In 2023, the Air Force notified SOFIS that its proposed staffing exceeded the number of needed FTEs. AR 2958–59. In response, SOFIS provided the Air Force with revised FTEs *and* prices. AR 2961–66. But in 2024, by comparison, SOFIS's response to the Air Force's July 2024 evaluation notices lacked revised pricing. *See* AR 3897–903. Further, in 2023, the Air Force actually requested—and received—final proposal revisions. AR 3060, 3077–81. Neither happened in July 2024.

---

[2] We recognize the tension between *Zolon* (which says SAM-registration lapses cannot be cured) and *Hanford* (which says they can) on this point. But that tension is academic because SOFIS loses under either approach.

To summarize, under either *Hanford* or *Zolon*, SOFIS loses. SOFIS loses under *Hanford* because it did not submit a revised proposal. It loses under *Zolon* because FAR 52-204-7(b)(1) runs from the initial (not revised) offer. Thus, SOFIS is left arguing that the FAR Council did not intend for FAR 52.204-7 to require continuous registration. Even if true, we cannot rescue SOFIS from its mistake by augmenting FAR 52.204-7's plain text with theories about the FAR Council's intent.

### B. The 2024 FAR 52.204-7 Amendment Is Not Retroactive

In the alternative, SOFIS insists that the 2024 amendment to FAR 52.204-7 works retroactively. SOFIS advances two textual arguments in support of its position. First, SOFIS points out that 2024 amendment is "effective immediately." 89 Fed. Reg. at 89474. Second, SOFIS notes that the 2024 amendment does not mention FAR 1.108, which contains the default rule that FAR amendments are not retroactive. So, SOFIS reasons, FAR 1.108 does not apply to the 2024 amendment because the amendment did not mention FAR 1.108, which means that the amendment works retroactively.

Defendants argue that SOFIS gets the rule backwards. For one thing, defendants point out that the 2024 amendment does not state it works retroactively. Further, they point out that the FAR default rule is that FAR amendments only operate prospectively. Lastly, they argue that the Air Force must apply the criteria in the solicitation, not later enacted rules, and the solicitation requires continuous registration.

Generally, FAR amendments are not retroactive. FAR 1.108 provides that, "[u]nless otherwise specified," "FAR changes apply to solicitations issued on or after the effective date of the change," i.e., only prospectively, not retroactively. FAR 1.108(d)(1); *see also BearingPoint, Inc. v. United States*, 77 Fed. Cl. 189, 193–94 (2007). True, contracting officers may incorporate "FAR changes in solicitations issued before the effective date, provided [contract] award" "occurs on or after the effective date" or "include changes in any existing contract with appropriate consideration," but FAR vests that decision solely in the contracting officer's "discretion." FAR 1.108(d)(2)–(3).

The 2024 amendment is not retroactive. The rule does not say that it applies retroactively, nor does it mention FAR 1.108(d). So the default rule that "FAR changes apply to solicitations issued on or after the [rule's]

effective date," applies to the 2024 amendment, meaning that the amendment does not retroactively excuse SOFIS's SAM-registration lapse. FAR 1.108(d)(1). That is true even though the rule says it is "effective immediately." 89 Fed. Reg. at 89474. Indeed, all that means is that the rule applies to "solicitations issued on or after" November 12, 2024. *See* FAR 1.108(d)(1). It does not, as SOFIS argues, suggest that the rule somehow took effect before its November 2024 effective date.

## CONCLUSION

Because ASTI and SOFIS fail to show that the Air Force's decision was arbitrary or capricious on the merits, we need not probe the question of prejudice or injunctive relief. *Tech Sys., Inc. v. United States*, 173 Fed. Cl. 677, 693 (2024). Accordingly, we deny ASTI's and SOFIS's motions for judgment on the administrative record. We deny the government's motion to dismiss. We grant defendants' motions for judgment on the administrative record. The Clerk of Court is directed to enter judgment accordingly. No costs.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge
